UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------X
                                   :

MICHAEL QUINN,                      :   Civil Action No.
                                   :   12 CV 2423 (KBF)
                Plaintiff,       :   (ECF case)
                                   :

    -against-                   :

                                   :

ELI S. JACOBS,                  :

                                   :

             Defendant.     :

                                   :
-----------------------------------------------X


## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIM


KATTEN MUCHIN ROSENMAN LLP
Steven Eckhaus
Evan Belosa
Leah Mary Campbell
575 Madison Avenue
New York, NY 10022
212.940.8800

Attorneys for the Plaintiff
Michael Quinn

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.......................................................ii

PRELIMINARY STATEMENT....................................................1

SUMMARY OF ARGUMENT ...................................................2

STATEMENT OF FACTS ........................................................3

ARGUMENT......................................................................5

    1.    The Counterclaim fails to state a claim for tortious
        interference with a contract. ...................................5

    2.    The economic interest privilege precludes a claim for
        tortious interference with a contract........................6

    3.    The conduct complained of is protected by the
        common-interest privilege.  ...................................7

    4.    However denominated, Mr. Jacobs' claims cannot
        survive the motion to dismiss .............................. 10

CONCLUSION................................................................. 10

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Glantz v. Cook United*,
 499 F. Supp. 710 (E.D.N.Y. 1979)........................................8

*Solow v. Stone*,
 994 F. Supp 173 (S.D.N.Y.), *aff'd* 163 F.3d 151 (2d Cir.
 1998)................................................................. 2, 5

*White Plains Coat & Apron v. Cintas*,
 460 F.3d 281 (2d Cir. 2006)...............................................5

### STATE CASES

*Ashcroft v. Hammond*,
 197 N.Y. 488, 90 N.E. 1117 (NY 1910) ........................... 3, 8

*Felsen v. Sol Cafe Mfg. Corp.*,
 24 N.Y.2d 682, 249 N.E.2d 459 (NY 1969) ...................... 3, 6

*Foster v. Churchill*,
 87 N.Y.2d 744, 665 N.E.2d 153 (NY 1996) .................... 5, 10

*Lama Holding Co. v. Smith Barney*,
 88 N.Y.2d 413, 668 N.E.2d 1370 (NY 1996)........................5

*Liberman v. Gelstein*,
 80 N.Y.2d 429, 605 N.E.2d 344 (NY 1992) .................... 8, 10

*Morrison v. Frank*, 81 N.Y.S.2d 743
 (NY Sup. Ct. NY County 1948)...........................................6

*Stillman v. Ford*,
 22 N.Y.2d 48, 238 N.E.2d 304 (NY 1968) ....................... 8, 9

### STATE STATUTES

N.Y. C.P.L.R. § 215(3).......................................................7

Rᴜʟᴇs

Fed. R. of Civ. P. 12(b)(6) ................................................ 1, 2

Plaintiff Michael Quinn ("Mr. Quinn"), through his attorneys, submits this memorandum of law in support of his motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Counterclaim of Defendant Eli S. Jacobs ("Mr. Jacobs").

## Preliminary Statement

Mr. Quinn brought this action on March 30, 2012, to recover damages resulting from Mr. Jacobs' unexcused breach, in January 2012, of a contract requiring Mr. Jacobs to repurchase from Mr. Quinn, an equity investment in Alternative Packaging Solutions, LP, for $400,000 plus interest.  In retaliation for Mr. Quinn's lawsuit, Mr. Jacobs now counterclaims that, in August 2010, he stepped down as Chairman of another one of his businesses, GeoSynfuels LLC ("GSF"), to placate Mr. Quinn and unnamed "Others" who would otherwise have called a shareholders' meeting where they would have made unspecified false and negative comments about Mr. Jacobs.[1]  As compensation for resigning as Chairman, Mr. Jacobs demands from Mr. Quinn $1 million in economic damages, $1 million in punitive damages,

---

[1] For purposes of this motion, Plaintiff accepts the allegations in the Counterclaim to be true.

and legal fees.

The Counterclaim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because (1) it does not state a claim upon which relief can be granted; and (2) Mr. Quinn's alleged statements and conduct are protected by the economic interest privilege, and by the common interest privilege.

## Summary of Argument

The Counterclaim, which Mr. Jacobs has labeled "Tortious Interference with Contract," is insufficient on its face because it does not allege that Mr. Quinn intentionally induced a third party to breach Mr. Jacobs' contract. *Solow v. Stone*, 994 F. Supp 173, 181-82 (S.D.N.Y.), *aff'd* 163 F.3d 151 (2d Cir. 1998). At best, the Counterclaim alleges that the parties were shareholders in GSF, and that Mr. Quinn and unnamed "Others" coerced Mr. Jacobs' resignation from the post of Chairman of GSF. Mr. Quinn's conduct in regard to the governance of a company in which he had a lawful economic interest, and his discussions with Mr. Jacobs affecting and concerning that same company in which they both had economic interests, are immune from a claim of

2

tortious interference with a contract. *Felsen v. Sol Cafe Mfg. Corp.,* 24 N.Y.2d 682, 687, 249 N.E.2d 459, 461 (NY 1969).

As a shareholder in GSF, Mr. Quinn had an undisputable economic interest in the management of that company. Mr. Quinn and Mr. Jacobs held a common interest in GSF being well served by its executives and board of directors, including the Chairman of the board of directors of the company. Any claim, sounding in tortious interference with a contract, or sounding in defamation, relating to the parties' statements to each other, or with other shareholders, concerning the governance of the company, are privileged and should be dismissed. *Ashcroft v. Hammond*, 197 N.Y. 488, 90 N.E. 1117 (NY 1910).

## **Statement of Facts**

Mr. Jacobs was appointed Chairman of GSF in 2006 (Countercl. ¶ 4), and at all times relevant was the largest shareholder in GSF. (Countercl. ¶ 6). Mr. Quinn invested in GSF after meeting Mr. Jacobs in the summer of 2009. (Countercl. ¶ 5) Mr. Jacobs avers that "Mr. Quinn and Others" acting as agents for one another, threatened that if Mr. Jacobs did not resign as

3

Chairman, they would call a shareholders' meeting where they would make "false negative allegations (the 'False Allegations') detrimental to [Mr.] Jacobs' reputation," which would hurt Mr. Jacobs' ability to raise capital for GSF, potentially destroying the value of his investment in GSF.  (Countercl. ¶ 7)

One of the Others met with Mr. Jacobs and demanded his immediate resignation.  (Countercl. ¶ 9)  Mr. Jacobs acquiesced and stepped down as Chairman on or about August 30, 2010. (Countercl. ¶¶ 11, 12)

Neither the content nor the substance of the alleged False Allegations were set forth in the Counterclaim.  Mr. Jacobs does not allege that Mr. Quinn, or the Others, acted with malice, or in reckless disregard for the truth, or bad faith, or without very good reasons for asking Mr. Jacobs to step down as Chairman. If, as Mr. Jacobs suggests, the convening of a shareholder meeting to expose his conduct would "destroy GSF"  (Countercl. ¶ 10), he does not even hint why Mr. Quinn and the Others would want to destroy the value of their own investments in GSF.

The Counterclaim was served May 16, 2012, one year and

4

nine months after the last event about which Mr. Jacobs complains.

## Argument

### 1

### The Counterclaim fails to state a claim for tortious interference with a contract

The Counterclaim fails to state a claim for tortious interference with a contract as it does not allege that Mr. Quinn intentionally induced a third party to breach a contract. *Solow v. Stone*, 994 F. Supp. 173, 181-82 (S.D.N.Y.), *aff'd* 163 F.3d 151 (2d Cir. 1998); *Lama Holding Co. v. Smith Barney*, 88 N.Y.2d 413, 424, 668 N.E.2d 1370, 1375 (NY 1996).

### 2

### The economic interest privilege precludes a claim for tortious interference with a contract

The economic interest privilege provides an independent and complete bar to this claim for tortious interference with a contract. *White Plains Coat & Apron v. Cintas*, 460 F.3d 281, 283 (2d Cir. 2006), (citing *Foster v. Churchill*, 87 N.Y.2d 744, 665

N.E.2d 153 (NY 1996)).

It is well-settled in New York that "a person who has a financial interest, as a stockholder in the business of another is privileged to interfere with a contract which that other person or business had with a third person if his purpose is to protect his own interest and if he does not employ improper means." *Felsen v. Sol Cafe Mfg. Corp*., 24 N.Y.2d 682, 687, 249 N.E.2d 459, 461 (NY 1969).

An economic interest in an underlying entity provides a sufficient basis to invoke the economic interest privilege and bar claims such as Mr. Jacobs' Counterclaim. In *Felsen v. Sol Cafe Mfg. Corp*., an employee of an acquired company was terminated by the successor company, and later sued the successor company for tortious interference. The Court of Appeals held that the claim for tortious interference with a contract against the successor company should have been dismissed because, as a stockholder, it had an economic interest in safeguarding the affairs of the company. *Id.* at 687 (*citing Morrison v. Frank*, 81 N.Y.S.2d 743 (NY Sup. Ct. NY County 1948) in support of the principle that a

shareholder's justifiable economic interest in a company is a complete defense to a claim for malicious interference with a contract).

## 3

## The conduct complained of is protected by the common-interest privilege

Although Mr. Jacobs denominates his Counterclaim as one for tortious interference with a contract, the allegations sound in defamation:

> In furtherance of the wrongful scheme, [Mr.] Quinn and the Others threatened [Mr.] Jacobs that unless he resigned as GSF's Chairman, the would publish to others false negative allegations (the "False Allegations") detrimental to Jacob's reputation . . .

(Countercl., ¶ 7.)   The claim of tortious interference with a contract was likely advanced to avoid the one-year statute of limitations applicable to defamation claims in New York.   N.Y. C.P.L.R. § 215(3).   However, the defamation claims would be barred by the common interest privilege even were they timely filed, which they were not.

Under New York law, a "communication made by one person to another upon a subject in which both have an interest is protected by a qualified privilege." *Stillman v. Ford*, 22 N.Y.2d 48, 53, 238 N.E.2d 304, 306 (NY 1968).  This privilege has been applied "where parties having an interest in a corporation or other institution have made arguably libelous statements in the course of communicating with other interested parties on the subject of the institution's management." *Glantz v. Cook United*, 499 F. Supp. 710, 716 (E.D.N.Y. 1979); *see also Ashcroft v. Hammond*, 197 N.Y. 488, 90 N.E. 1117 (NY 1910).

To overcome the common-interest privilege, it is Mr. Jacobs' burden to plead facts showing that the statements were made, or threatened to be made, with reckless indifference or "a high degree of awareness of its probable falsity" or that Mr. Quinn "entertained serious doubts as to the truth" of the statements. *Liberman v. Gelstein*, 80 N.Y.2d 429, 438, 605 N.E.2d 344, 350 (NY 1992) (internal quotations omitted).  Mr. Jacobs makes no such allegations, nor has he alleged that Mr. Quinn was motivated by personal animus or malice.

Even false and harmful statements uttered among investors concerning the policies of the company will be subject to the common interest privilege.   As the New York Court of Appeals observed in *Stillman*:

> The parties herein were engaged in a dispute about the policy of an institution in which they all were deeply interested.  In defending their respective positions, each faction accused the other of misrepresenting its views in order to win support. Whether or not, in the final analysis, any of these accusations were true or false is hardly relevant. As long as the statements were motivated not by ill will or personal spite but by a sincerely held desire to protect the institution, they are not actionable.

22 N.Y.2d at 53, 238 N.E.2d at 306.

## 4

### However denominated, Mr. Jacobs' claims cannot survive

The common interest privilege and the economic interest privilege result from the same concerns: where parties share a common interest in protecting the financial health and security of a commercial enterprise, otherwise arguably actionable statements and conduct are not actionable.   "The rationale for

applying the privilege in these circumstances is that so long as the privilege is not abused, the flow of information between persons sharing a common interest should not be impeded." *Liberman v. Gelstein*, 80 N.Y. 2d at 437, 605 N.E.2d at 349.  The standard for measuring abuse of the privilege is malice.  *Foster v. Churchill*, 87 N.Y.2d at 750, 665 N.E.2d at 158 (corporate directors protected by "economic interest" privilege despite finding that they did not act in good faith where there was no finding of malice).  Here, Mr. Jacobs' failure to allege malice, the absence of any allegation that Mr. Quinn and the "Others" believed their statements were false, or that their concerns over Mr. Jacobs' conduct were misplaced, or that they did not have any basis for their statements, or that his resignation was not in fact voluntary, are fatal to his claims and cannot be cured by amendment.

## Conclusion

As a shareholder in GSF, Mr. Quinn had an undisputable economic interest in the management and governance of the enterprise.  Mr. Quinn and Mr. Jacobs shared a common interest

10

in the identity and performance of the Chairman of the board of directors.  In the absence of allegations that the statements were made with reckless indifference for the truth, and the conduct compelled by unjustifiable malice, the statements made, and the actions taken, to protect those economic and common interests are privileged as a matter of New York law.  This must be the outcome, as for more than one hundred years, there has existed, and still exists, a vital public policy favoring free expression among parties having economic and common interests concerning the governance of the enterprise in which they have invested. That public policy, supported by common sense and the great weight of legal authority, compels dismissal of the Counterclaim.

For the foregoing reasons, Mr. Quinn asks that Mr. Jacobs' Counterclaim be dismissed with prejudice.

Dated:     New York, New York
           June 6, 2012


                                        KATTEN MUCHIN ROSENMAN LLP



                                        By:_____/s/_____
                                        Steven Eckhaus (SE 1929)

Evan Belosa (EB  7959)
Leah Mary Campbell (LC 7456)
575  Madison Avenue
New York, New York 10022-2585
Steven.eckhaus@kattenlaw.com
Tel:  (212) 940-8860
Fax:  (212) 894-5925

Attorneys for the Plaintiff
Michael Quinn


To:   David E. Ross, Esq.
      Kasowitz, Benson, Torres & Friedman LLP
      1633 Broadway
      New York, NY 10019-6799

      Attorneys for the Defendant
      Eli S. Jacobs

12