UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL QUINN,

        Plaintiff,

    -against-                      12 Civ. 2423 (KBF)

ELI S. JACOBS,

        Defendant.


**DEFENDANT'S MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S MOTION TO
<u>DISMISS COUNTERCLAIM</u>**


        KASOWITZ, BENSON, TORRES
          & FRIEDMAN LLP
        David E. Ross
        Danielle M. Kudla
        1633 Broadway
        New York, New York 10019
        Tel:  (212) 506-1700

        *Attorneys for Defendant
        Eli S. Jacobs*

**PRELIMINARY STATEMENT**

Defendant Eli Jacobs has asserted a counterclaim against plaintiff Michael Quinn for tortious interference with Jacobs' contract of employment as Chairman of GeoSynfuels, LLC ("GSF"). The counterclaim alleges that Quinn, a shareholder of GSF, formed a "wrongful scheme" with certain other of GSF shareholders "to force Jacobs to resign as Chairman of GSF," though Quinn and his co-conspirators "had no valid basis for their scheme," "nor were there any valid grounds on which Quinn … could demand that Jacobs resign." The counterclaim further pleads that using "coercive and extortionate" threats that Quinn would publicize false allegations that would damage Jacobs' reputation and destroy the value of Jacobs' equity in GSF, Quinn procured the termination of Jacobs' contract with GSF by forcing Jacobs to resign. The counterclaim further pleads that Quinn was "not privileged to take this wrongful action against Jacobs."

Quinn moves to dismiss the counterclaim pursuant to FRCP 12(b)(6) on three grounds: (1) the counterclaim does not explicitly allege that Quinn "intentionally induced a third party [GSF] to breach a contract" with Jacobs; (2) that as a shareholder of GSF, Quinn had an absolute "economic interest privilege" to force the termination of Jacobs' contract; and (3) to the extent the counterclaim sounds in defamation, Quinn also had an absolute "common interest privilege" to procure the termination of Jacobs' contract. Each of these grounds is based on a misstatement of the applicable law and misstatement of the counterclaim's allegations.

First, the counterclaim states a valid, cognizable claim under New York law that Quinn tortiously procured the wrongful termination of Jacobs' employment contract with GSF. There are no "magic words" to state such a claim, and here it is clear from the context that Quinn's actions were intentional, without justification, coercive and extortionate. In addition, a claim for tortious interference with contract is stated where the wrongful conduct results in the termination

of the contract, whether direct or constructive. In addition, the facts pled in the counterclaim also state a claim under New York law for tortious interference with prospective economic advantage. Accordingly, the counterclaim pleads at least two cognizable claims for relief, requiring denial of Quinn's motion.

Second, the counterclaim pleads that Quinn had no privilege to take the wrongful action against Jacobs. That allegation alone, which Quinn fails to cite to the Court, precludes a grant of Quinn's motion premised on the "economic interest privilege" which Quinn invokes. Moreover, the economic interest privilege is an affirmative defense as to which Quinn has the burden of proof, and the privilege is qualified, not absolute, implicating fact questions regarding Quinn's motivations which cannot be determined on a motion to dismiss. Indeed, the very cases Quinn cites to the Court hold that such qualified privilege does <u>not</u> apply where, as alleged here, the offending party "employs improper means" in procuring the termination of an executive's contract. Quinn's cases also demonstrate that whether the economic interest privilege applies is a fact question which cannot be decided at the motion to dismiss stage.

Finally, though the qualified "common interest privilege" is likewise an affirmative defense that cannot be determined on a motion to dismiss, it has no application here because Jacobs' claim is for tortious interference with contract (and prospective economic advantage), not defamation.

Accordingly, plaintiff's motion to dismiss the counterclaim should be denied in its entirety.

## FACTS ALLEGED IN THE COUNTERCLAIM

In or about 2006, Jacobs was appointed Chairman of GSF. (Counterclaim "CC" ¶ 4.) As Chairman of GSF, Jacobs earned $435,000 in annual compensation. (*Id.*) In or about June 2010,

2

Quinn and others acting in concert with him (the "Others") formed a wrongful scheme to force Jacobs to resign as Chairman of GSF. (*Id.* ¶ 6.) Quinn and the Others "had no valid basis for their scheme," "nor were there any valid grounds on which Quinn … could demand that Jacobs resign." (*Id.*) Quinn and the Others threatened Jacobs that "unless he resigned as GSF's Chairman, they would publicize to others false negative allegations (the "False Allegations") detrimental to Jacobs' reputation, and would, if necessary destroy the value of Jacobs' equity in GSF." (*Id.* ¶ 7.) Quinn and the Others acted as agents for one another in carrying out this wrongful scheme to oust Jacobs as Chairman of GSF, and to defame him, and otherwise damage his reputation. (*Id.* ¶ 8.) Neither Quinn, nor any of these Others was privileged to take this action against Jacobs. (*Id.*)

As part of the wrongful scheme, one of the Others, acting as agent for Quinn, visited Jacobs' New York office and threatened Jacobs that if he did not immediately resign as Chairman from GSF, then Quinn and the Others would call a shareholder meeting at which they would publish the False Allegations, would otherwise permanently damage Jacobs' good name and reputation, and could potentially destroy the value of Jacobs' substantial equity in GSF. (*Id.* ¶ 9.) During this time period, GSF was in the midst of raising capital essential to the company's stability and growth. (*Id.* ¶ 10.) As a substantial shareholder in GSF, and as its Chairman dedicated to GSF's development, Jacobs was acutely aware of the devastating effects a shareholder meeting accusing him of the False Allegations would have on GSF's then-current and future fundraising efforts, and its ability to continue. A disclosure of even such absolutely false allegations as threatened to be published by Quinn and the Others had the potential to terminate all capital raising for GSF and, as a result, destroy the company. (*Id.*)

Faced with the immediate threat that Quinn and the Others would destroy GSF, and destroy Jacobs' professional and personal reputation by publishing the False Allegations, Jacobs was left with no choice but to accede to Quinn's and the Others' coercive and extortionate threats. (*Id.* ¶ 11.) As a "direct result of Quinn's and the Others' wrongdoing, Jacobs was constructively terminated as Chairman of GSF on or about August 30, 2010, and deprived of $435,000 in annual income as a result." (*Id.* ¶¶ 12-13.)

## ARGUMENT

### I. STANDARD OF REVIEW

On a motion to dismiss a counterclaim for failure to state a claim, the allegations of the counterclaim must be accepted as true with all reasonable inferences drawn in favor of defendant Jacobs. *Wells Fargo Bank Northwest, N.A. v. TACA Int'l Airlines, S.A.*, 247 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) (a motion to dismiss a counterclaim is governed by the Rule 12(b)(6) standard). In addition, the Court must liberally construe the counterclaim and sustain it unless it is beyond doubt that Jacobs can prove no set of facts which would entitle him to relief. *Id.* Further, the Court should deny a motion to dismiss where the facts pled state *any* cognizable cause of action. *See, e.g.,Tietjen v. Hamilton-Beach/Proctor-Silex, Inc.*, No. 97-cv-188, 1998 U.S. Dist. Lexis 19404, at *9-10 (S.D.N.Y. Nov. 25, 1998) (denying motion to dismiss as facts alleged stated claims for negligence and prima facie tort though they had not expressly been asserted).

### II. JACOBS HAS PLEAD A VALID, COGNIZABLE CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT

To plead a claim for tortious interference with contract under New York law, a plaintiff must allege (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procuring of the breach of

that contract; and (4) damages. *White Plains Coat & Apron Co. v. Cintas Corp.*, 460 F.3d 281, 285 (2d Cir. 2006). Here, the counterclaim alleges all of these elements: it alleges (1) that Jacobs was employed as GSF's Chairman (CC ¶¶ 4, 6); (2) that Quinn was aware of the contract (*id.* ¶¶ 6, 7, *et seq.*); (3) that Quinn formed a wrongful scheme to force the termination of Jacobs' contract and that the scheme resulted in such termination (*id.* ¶¶ 6, *et seq.*); and (4) that Jacobs suffered damages as a direct result (*id.* ¶¶ 12, 13, 15).

Plaintiff's single-sentence initial argument is that the counterclaim is inadequately pled because it does not allege that plaintiff "intentionally induced a third party to breach a contract." First, it is clear that the counterclaim pleads facts to show Quinn's actions were "intentional" because it pleads that Quinn "formed a wrongful scheme to force Jacobs to resign as Chairman of GSF," and that Quinn "threatened Jacobs that unless he resigned…[Quinn] would publicize to others false negative allegations…." (*Id.* ¶¶ 6,7.)

Second, the counterclaim clearly pleads that Quinn procured the termination of Jacobs' employment contract with third-party GSF. (*Id.* ¶¶ 7-12.) *White Plains Coat & Apron Co.*, 460 F.3d at 285. Nothing more is required. Contrary to Quinn's suggestion, it is not necessary that Quinn's wrongful acts have caused GSF to terminate Jacobs; a tortious interference with contract claim is stated where, as here, Quinn's acts resulted in the termination of Jacobs' contract with a third party (GSF), whether that termination was direct or constructive. *Id.*; *see Finley v. Giacobbe*, 827 F. Supp. 215, 223 (S.D.N.Y. 1993) (denying motion to dismiss tortious interference with contract claim where plaintiff alleged she was forced to resign her position as medical director). Quinn cites no cases to the contrary.[1]

---

[1] Quinn cites only *Solow v. Stone*, 994 F. Supp. 173, 181-82 (S.D.N.Y. 1998), and *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996), neither of which addresses a constructive discharge situation nor refutes that it is sufficient to state a claim for tortious

5

In addition, the facts alleged in the counterclaim also state a claim for tortious interference with prospective economic advantage. *543 East 11th St. Housing Dev. Fund Corp. v. Hendrick*, 90 A.D.3d 541, 542 (1st Dep't 2011). The elements of such a claim are: (1) defendant's knowledge of a business relationship between plaintiff and a third party; (2) defendant's intentional interference with the relationship; (3) defendant used wrongful means or was motivated by malice; and (4) resulting injury to plaintiff's business relationship. *Id.* Here, the counterclaim alleges Quinn knew of Jacob's business relationship with GSF (CC ¶ 6), that Quinn intentionally interfered with that business relationship (*id.* ¶¶ 6-9, 11-12), that Quinn used wrongful means to do so including by engaging in coercion and extortion and that Quinn had "no valid basis" nor "any valid grounds" for doing so (*id.* ¶¶ 6, 7),[2] causing injury to Jacobs' business relationship with GSF (*id.* ¶¶ 10-14).

Accordingly, the complaint properly pleads a claim for tortious interference with contract under New York law, and also pleads a claim for tortious interference with prospective economic advantage.[3]

---

interference with contract where the offending conduct resulted in the termination of a contract between the counterclaim-plaintiff and a third party.

[2] In addition to pleading facts showing Quinn used "wrongful means," the counterclaim also pleads facts showing malice, which is pled where a "defendant engages in conduct 'for the sole purpose of inflicting harm on plaintiffs.'" *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004). The counterclaim pleads such malice as Quinn engaged in a wrongful scheme to force Jacobs to resign, though Quinn had neither valid basis nor valid grounds on which he could demand the resignation, and used coercive and extortionate means to force Jacobs to resign. (CC ¶¶ 6, 7, 11).

[3] The Court should deny a motion to dismiss where the facts pled state *any* cognizable cause of action. *See Tietjen*, 1998 U.S. Dist. Lexis 19404, at *9-10.

6

**III. WHETHER QUINN IS ENTITLED TO THE PROTECTION OF THE QUALIFIED "ECONOMIC INTEREST PRIVILEGE" -- AN AFFIRMATIVE DEFENSE -- IS A FACT QUESTION WHICH CAN NOT BE DETERMINED ON THIS MOTION TO DISMISS, PARTICULARLY WHERE THE COUNTERCLAIM ALLEGES QUINN USED IMPROPER MEANS TO PROCURE THE BREACH OF CONTRACT**

The "economic interest privilege" is an affirmative defense to a claim for tortious interference with contract as to which Quinn bears the burden of pleading it, and then proving its application. *See Foster v. Churchill,* 87 N.Y. 2d 744, 750 (1996) (economic interest privilege is a "defense" to claim for tortious interference with contract); *see also Felsen*, 24 N.Y.2d 682, 687 (1969); *White Plains Coat & Apron Co.*, 460 F.3d at 286. Quinn has done neither on his motion, which is addressed only to the face of the counterclaim.

Furthermore, the New York Court of Appeals has made clear -- in the lead case cited by Quinn -- that the economic interest privilege is qualified, not absolute, and that it does not apply at all where the defendant "employs improper means" in procuring the termination of a contract between a party and a business in which defendant is a stockholder. *See Felsen*, 24 N.Y.2d at 687 (economic interest privilege is available only where defendant's "purpose is to protect his own [financial] interest and if he does not employ improper means").

Here, the counterclaim alleges that Quinn was *not* "privileged to take this wrongful action against Jacobs." (CC ¶ 8.) That allegation alone precludes the grant of this motion. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (on a 12(b)(6) motion, "the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in favor of the non-moving party"). The counterclaim further expressly alleges that Quinn *used wrongful means* to procure the breach of Jacobs' contract, including the formation of a "wrongful scheme," which had "no valid basis," nor "any valid grounds," and which employed "coercive and extortionate threats" that Quinn would publicize false allegations harmful to

7

Jacobs' reputation and financial interest unless Jacobs gave in to such threats. (CC ¶¶ 6-8, 11.) These allegations, which are presumed true, preclude the grant of the motion on the basis of this qualified privilege. *Felsen*, 24 N.Y.2d at 687. Furthermore, all but one of the cases cited by Quinn which apply the affirmative defense were decided after discovery or trial, confirming that whether the qualified privilege applies is a fact question. *See White Plains Coat & Apron*, 460 F.3d at 283 (certifying to the New York Court of Appeals after a grant of summary judgment in defendant's favor whether having an economic interest in soliciting business of a competitor and making a profit was a sufficient right to trigger the economic interest defense); *Felsen*, 24 N.Y.2d at 685 (reversing jury verdict in favor of plaintiff based on economic privilege defense); *Foster*, 87 N.Y.2d at 751 (affirming trial court's judgment after a non-jury trial, finding defendant not liable for tortious interference where defendants did not act outside the scope of their officer duties, were significant stockholders, and were acting in the interest of the company, which was on the brink of insolvency).

Accordingly, Quinn's as yet un-plead affirmative defense based on a qualified privilege cannot be determined on this motion to dismiss, particularly where the counterclaim pleads facts undermining the applicability of that qualified privilege, and raising fact questions with respect thereto.

## IV.    THE COMMON INTEREST PRIVILEGE HAS NO APPLICATION HERE

Quinn's final contention is that the counterclaim sounds in defamation, and, on that basis, is barred by the "common interest privilege." This straw man argument also fails. As set forth in Point II above, the counterclaim pleads a cause of action for tortious interference with contract, as well as a claim for tortious interference with prospective economic advantage. *Supra* at pp. 4-6. Jacobs has not attempted to plead, nor does he plead a defamation claim.

Accordingly, Quinn's effort to obtain dismissal based on a qualified privilege that may be applicable to a claim not pled cannot carry the day.

## CONCLUSION

For the foregoing reasons, Quinn's motion to dismiss Jacobs' counterclaim should be denied in its entirety.

New York, New York
June 26, 2012

>Respectfully submitted,
>
>KASOWITZ, BENSON, TORRES
> & FRIEDMAN LLP
>
>By: /s/ David E. Ross
>     David E. Ross (dross@kasowitz.com)
>     Danielle M. Kudla (dkudla@kasowitz.com)
>
>1633 Broadway
>New York, New York 10019
>(212) 506-1700
>*Attorneys for Defendant*